1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

LISA M. BLESSING,

11

Plaintiff,

12

v.

13

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

14

15

Defendant.

CASE NO. 12-cv-05275-JRC

ORDER ON PLAINTIFF'S
COMPLAINT

16

17

        This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19

Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United

20

States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos.

21

13, 17, 18).

22

        In this case, the ALJ discounts the opinions of plaintiff's treating and examining

23

physicians and gives great weight to the opinion of a reviewing physician who has never

24

seen nor examined plaintiff.  Although an ALJ can do this in certain limited

circumstances, in this case, the ALJ failed to provide specific and legitimate reasons for

doing so.  Therefore, this matter must be reversed and remanded to the ALJ for further

findings pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, LISA MARIE BLESSING, suffered bilateral strokes on December 18,

2008 (Tr. 169), which is her alleged onset date (Tr. 149).  She was born in May of 1966

and had completed the 10th grade, receiving vocational training in business computers

(Tr. 38, 174).  She previously had worked as an accounting clerk, office manager and

cabinet maker (Tr. 27, 176).  In August of 2008, prior to the stroke, she had received

substance abuse treatment for methamphetamine abuse (Tr. 39).  She also has a history of

using alcohol and marijuana (Tr. 38-39).

Following her stroke in December of 2008, she was hospitalized for approximately

one month and was discharged on January 16, 2009 (Tr. 228-392).  She has not worked

since.  At the time of the hearing on February 4, 2011, plaintiff was living with her

mother and stepfather (Tr. 40).  She does very little around the house other than take out

the garbage once a week.  She usually goes for a morning walk and then returns home

and watches TV or reads detective and romance novels (Tr. 42-47).

The Administrative Law Judge, the Honorable Verrell Dethloff ("the ALJ"),

issued a decision on April 28, 2011, finding plaintiff not disabled (Tr. 7-34).  The ALJ

found that plaintiff had the following severe impairments:  status post-stroke/bifrontal

ischemic injury, adhesive capsulitis, hepititus C, cognitive disorder, depression, and

1  polysubstance abuse (*see* Tr. 12; 20 CFR 416.920(c)).  Despite these severe impairments,

2  the ALJ concluded that plaintiff had residual functional capacity ("RFC") to perform

3  light work as defined in 20 CFR 416.967(b) (Tr. 15-16).  The ALJ concluded, based on a

4  hypothetical provided to a vocational expert, that she would be capable of performing

5  light unskilled work such as a hotel/motel housekeeper, laundry service folder, or

6  semiconductor die loader (Tr. 28).

7        Plaintiff raises the following issues:  (1) Did the ALJ err by rejecting opinions of

8  one treating physician and two examining physicians about plaintiff's mental limitations?

9  (2) Did the ALJ err by adopting the opinions of the nonexamining psychologists about

10  plaintiff's mental limitations? (3) Did the ALJ comply with SSR 96-8p when formulating

11  plaintiff's RFC and are the ALJ's step 5 findings based on that RFC supported by law

12  and fact? (ECF No. 13, page 1).

13

14                        STANDARD OF REVIEW

15        Plaintiff bears the burden of proving disability within the meaning of the Social

16  Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

17  the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

18  172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

19  (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines

20  disability as the "inability to engage in any substantial gainful activity" due to a physical

21  or mental impairment "which can be expected to result in death or which has lasted, or

22  can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

23  §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's

24

impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also  Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121,  2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted).

<u>DISCUSSION</u>

I.   **Did the ALJ err by rejecting opinions from one treating physician and two examining physicians about plaintiff's mental limitations?**

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).   If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).  It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the

Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599, 601 (9th Cir. 1999)). Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan, supra,* 169 F.3d at 603. The ALJ also may draw inferences "logically flowing from the evidence." *Sample, supra,* 694 F.2d at 642 (citations omitted).

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *see also* 20 C.F.R. § 416.902 (treating physician is one who provides treatment and has "ongoing treatment relationship" with claimant). The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9. However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In addition, "[a] physician's opinion of disability 'premised to a large extent upon [plaintiff]'s own accounts of h[er] symptoms and limitations' may be disregarded where

those complaints have been 'properly discounted.'" *Morgan, supra,* 169 F.3d at 602

(*quoting Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (*citing Brawner v. Sec. HHS*,

839 F.2d 432, 433-34 (9th Cir. 1988))).

The ALJ must provide "clear and convincing" reasons for rejecting the

uncontradicted opinion of either a treating or examining physician or psychologist.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d

1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

a treating or examining physician's opinion is contradicted, that opinion "can only be

rejected for specific and legitimate reasons that are supported by substantial evidence in

the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035,

1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v.*

*Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of

the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849

F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence

presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

1984) (per curiam).  The ALJ must only explain why "significant probative evidence has

been rejected." *Id.* (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating medical source's opinion than to the

opinions of those who do not treat the claimant.  *Lester, supra*, 81 F.3d at 830 (*citing*

*Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  On the other hand, an ALJ need

not accept the opinion of a treating physician, if that opinion is brief, conclusory and

inadequately supported by clinical findings or by the record as a whole. *Batson v.*

*Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004)

(*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *see also Thomas v.*

*Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  An examining physician's opinion is

"entitled to greater weight than the opinion of a nonexamining physician."  *Lester, supra*,

81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d).  A non-examining

physician's or psychologist's opinion may not constitute substantial evidence by itself

sufficient to justify the rejection of an opinion by an examining physician or

psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may

constitute substantial evidence when it is consistent with other independent evidence in

the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at

752).  "In order to discount the opinion of an examining physician in favor of the opinion

of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons

that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d

1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831); *see also* 20 C.F.R. §

404.1527(d)(2)(i) (when considering medical opinion evidence, the Commissioner will

consider the length and extent of the treatment relationship).

    Dr. Utt.

       Following plaintiff's stroke, her main treating physician was Dr. Terrill Utt.  He

assessed that plaintiff had a cerebral embolism with infarction, subarachnoid hemorrhage,

and hepatitis C viral without hepatic coma (Tr. 408-09).  He continued to follow plaintiff and had a series of progress notes for symptoms related to her stroke and treatment for her left shoulder pain and depression (Tr. 420-23).

At the request of DSHS, Dr. Utt was asked to perform a physical evaluation on March 23, 2010 (Tr. 599-605).  His diagnoses included:  post-CVA (cerebral vascular accident) cognitive impairment that was severe; balance/coordination impairment that was marked; mood disorder and depression that was moderate; and chronic hepatitis C that was moderate.  In addition to limitations in balancing, bending, climbing, crouching, handling, kneeling, pulling, pushing, reaching, and stooping, Dr. Utt opined that she was "severely limited by cognitive impairment as well as physical" impairment (Tr. 602), and that she had significant short-term memory loss with difficulty retaining new facts and skills (Tr. 603).  Regarding plaintiff's diagnosed post-CVA cognitive impairment that was rated by Dr. Utt as severe, the form filled out by Dr. Utt indicated that diagnoses rated as severe indicated an "Inability to perform one or more basic work-related activities," and Dr. Utt specified that plaintiff's ability to learn, do basic tasks or start a new job were affected severely by her post-CVA cognitive impairment (*see* Tr. 602).

Dr. Utt also completed a SSA form HA-1152-U3 Medical Source Statement of Ability to Do Work Related Activities on January 7, 2011 in which he opined that she had "moderate" and "marked" functional limitations (Tr. 626-28).  At this time, Dr. Utt also indicated that the affect on plaintiff's ability to understand and remember detailed instructions by her impairments was "extreme," while the affect on her ability to understand and remember short, simple instructions was "moderate" (*see* Tr. 626).

Despite these extensive findings, the ALJ determined that Dr. Utt had "insufficient support" for his findings and, instead, relied on the opinion of a reviewing psychologist, Dr. Renee Eisenhauer, Ph.D. who reviewed some, but not all, of the records, and concluded that plaintiff was able to "remember and understand simple instructions" (Tr. 440). Dr. Eisenhauer's finding was "affirmed" by another reviewing psychologist, Dr. Bruce Eather, Ph.D., who, in a one-sentence analysis concluded "I HAVE REVIEWED ALL EVIDENCE OF FILE (sic) AND THE ASSESSMENT OF 10/29/2009 IS AFFIRMED AS WRITTEN" (Tr. 462).

In this case, the ALJ found "insufficient support" for Dr. Utt's conclusion that plaintiff had "affect and judgment problems since the brain injury caused by her aneurysm," and found that Dr. Utt's functional assessments were "conclusory and insufficient to support the degree of limitations alleged" (Tr. 26). The ALJ further concluded that Dr. Utt's reliance on statements from plaintiff "are not reliable" because plaintiff had failed to disclose her substance abuse (Tr. 27).

The Court makes several observations about the ALJ's analysis. First, the ALJ cited to no functional assessments from any examining or treating doctors that contradict Dr. Utt's functional assessments regarding her mental impairments.

Second, although Dr. Utt is a primary care physician, a primary care physician's professional decisions regarding his patient's mental health is within his field of expertise. A doctor does not have to be a specialist in mental health in order to provide a medical opinion regarding mental health limitations, although area of specialty is a relevant factor to be considered. *See, e.g., Van Nguyen v. Barnhart,* 170 Fed. Appx. 471,

473 (9th Cir. 2006) (per curiam) (unpublished opinion) ("the ALJ may not discredit [the treating general physician's] opinion on the ground that she is not a board certified psychiatrist") (*citing Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)); *Payne v. Comm'r of Soc. Sec.*, 402 Fed. Appx. 109, 120 n.4 (6th Cir. 2010); 20 C.F.R. 404.1527(c)(5). The Ninth Circuit specifically has indicated that "it is well established primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'" *See Sprague, supra*, 812 F.2d at 1232 (*citing* C. Tracy Orleans, Ph.D., Linda K. George, Ph.D., Jeffrey L. Houpt, M.D. and Keith H. Brodie, M.D., How Primary Care Physicians Treat Psychiatric Disorders: A National Survey of Family Practitioners, 142 Am. J. Psychiatry 52 (Jan. 1985)).

Third, Dr. Utt's assessments were supported by his own clinical findings and examinations, as well as findings from other consulting examiners, including Dr. Jordan Firestone, M.D. (Tr. 415-16) and Dr. Daniel Neims, PsyD. (Tr. 607-24). For example, Dr. Neims opined that plaintiff was markedly limited in her ability to learn new tasks; exercise judgment and make decisions; and to perform routine tasks (*see* Tr. 611). Dr. Utt's findings also were consistent with those of Dr. Mayers, who found that plaintiff had significant limitations in judgment, understanding and communication, some cognitive dysfunction, a notably "flat" affect with unusual speech and a level of dysfunction in interacting with others (*see* Tr. 426-28).

Fourth, although the ALJ concluded that Dr. Utt's analysis was "conclusory" and that he provided "insufficient to support the degree of limitations assessed" (Tr. 26), it is notable that Dr. Utt is the one treating physician that had a long and extensive record

regarding plaintiff; and had seen, examined, and treated her on a number of occasions, providing documentation in the medical record for severe symptoms and limitations in her activities and mental health status  (*see, e.g.,* Tr. 420-23, 599-605, 626-28).

For all of the above reasons, and based on the relevant record, the Court finds that the ALJ's conclusion that "Dr. Utt's opinion regarding the claimant's mental functioning is not supported or consistent with the record as a whole" is not a finding that is based on substantial evidence in the record as a whole (*see* Tr. 27). *See Magallanes*, *supra*, 881 F.2d at 750 (*quoting Davis*, *supra*, 868 F.2d at 325-26) ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion'").  Therefore, the ALJ's rejection of Dr. Utt's opinion is not supported by specific and legitimate reasons based on substantial evidence in the record as a whole to reject his opinions.  *See Lester, supra*, 81 F.3d at 830-31 (*citing Andrews*, 53 F.3d at 1043) (a treating physician's opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record"). Therefore, this matter must be reversed and remanded for further findings.

Dr. Neims, Psy.D.

Dr. Neims performed a psychological/psychiatric evaluation on plaintiff for the Department of Social and Health Services on March 31, 2010 (Tr. 607-24).  Dr. Neims, consistent with Dr. Utt, concluded that plaintiff had marked limitations in her ability to learn new tasks, exercise judgment, make decisions and perform routine tasks (*see* Tr.

611).  The ALJ concluded that "Dr. Neims failed to provide specific support for any of the limitations" (Tr. 26) and therefore discounted this evidence.

The ALJ concludes that Dr. Neims' findings were "not supported by mental status examination findings, nor are they consistent with the record" (Tr. 26).  On the contrary, Dr. Neims provided detailed bases for his findings (Tr. 609) and conducted a "Mental Status Examination," in which he documented a number of observations, as well as tests, that led to his conclusions (Tr. 609-24).  For example, Dr. Neims observed that plaintiff presented with a blunted, labile and incongruent affect (Tr. 618). He also observed that plaintiff only could remember one out of three items after a five minute delay (*see* Tr. 617). Dr. Neims indicated that plaintiff committed an error during a simple subtraction task and failed to interpret common proverbs appropriately (*see id.*).

The ALJ concludes that much of Dr. Neims' evaluation was based on "claimant's subjective reports, which are not fully reliable, particularly in light of the fact that the claimant was not forthcoming with Dr. Neims regarding her substance abuse." (Tr. 26.) The Court respectfully disagrees that Dr. Neims' evaluation was based on subjective reporting, as indicated by the inclusion by the Court above, *see supra*, of some of Dr. Neims' objective observations and results of MSE testing.  The Court also notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University

Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725; *see also Blankenship, supra*, 874 F.2d at 1121 ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)).

1    Given the record in this matter, to discount Dr. Neims' entire objective evaluation

2    because of a failure to disclose drug use by plaintiff does not satisfy the requirement to

3    provide specific and legitimate reasons based on substantial evidence in the record as a

4    whole to reject Dr. Neims' conclusions, which are based on so much more.

5        Dr. Mayers, Ph.D.

6        Similarly, on October 8, 2009, Dr. Mayers performed a DDS Consultive

7    Psychological Evaluation, which included a review of records (Tr. 424-28).  Dr. Mayers

8    was fully informed of plaintiff's past substance abuse (*see* Tr. 424).  Although Dr.

9    Mayers did not provide a complete functional assessment, she concluded that plaintiff's

10   reasoning and understanding were "poor" and that plaintiff had changes in cognitive

11   functioning (*see* Tr. 426-28).  Consistent with the conclusions of Dr. Neims and Dr. Utt,

12   Dr. Mayers concluded that plaintiff's ability to exercise judgment and make decisions

13   also was "poor" (*see id*.).

14

15       Defendant argues that Dr. Mayer's assessment is consistent with the ALJ's

16   findings (ECF No. 17, page7).  This simply is not accurate.  The ALJ acknowledged that

17   his findings were not consistent with Dr. Mayer's assessment when he failed to credit all

18   of Dr. Mayers' conclusions because the ALJ concluded that some of those (unspecified)

19   opinions were based on "claimant's subjective reports" (Tr. 25).  Again, for the reasons

20   stated above, the Court concludes that the ALJ failed to provide specific and legitimate

21   reasons based on substantial evidence in the record as a whole to reject the limitations

22   identified by Dr. Mayers, nor did the ALJ explain why Dr. Mayers had reached similar

23   opinions as other physicians who were able to provide "a detailed longitudinal picture" of

24

1  plaintiff's impairments, 20 CFR§416.927(d)(2), which cannot be replicated by a

2  reviewing consultant who neither treated nor examined plaintiff.

3

4  **II.     Did the ALJ err by adopting the opinions of the nonexamining**

5  **psychologists about plaintiff's mental limitations?**

6          Regarding state agency medical consultants, the ALJ is "required to consider as

7  opinion evidence" their findings, and also is "required to explain in his decision the

8  weight given to such opinions." *Sawyer v. Astrue*, 303 Fed. Appx. 453, 455, 2008 U.S.

9  App. LEXIS 27247 at **3 (9th Cir. 2008) (citations omitted) (unpublished opinion).

10  According to Social Security Ruling ("SSR") 96-6p, "[a]dministrative law judges . . . .

11  may not ignore the[] opinions [of state agency medical and psychological consultants]

12  and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996

13  WL 374180 at *2. This ruling also provides that "the administrative law judge or Appeals

14  Council must consider and evaluate any assessment of the individual's RFC by State

15  agency medical or psychological consultants," and said assessments "are to be considered

16  and addressed in the decision." *Id.* at *4. Likewise, SSR 96-5p, provides that State

17  agency "medical and psychological consultant findings about the nature and severity of

18  an individual's impairment(s), including any RFC assessments, become opinion

19  evidence," and "administrative law judges . . . .  must address the[se] opinions in their

20  decisions." SSR 96-5p, 1996 WL 374183 at *6.

21          In this case, the ALJ certainly considered the state's medical consultants' opinions

22  and relied on them, over the treating and examining physicians.  However, state agency

23

24

1   consultant, Dr. Eisenhauer, reviewed only a few records dated "12/8" and "12/16/08," as

2   well as Dr. Mayers' consultative mental assessment (*see* Tr. 440).  She did not,

3   apparently, review subsequent assessments or records prepared by other treating and

4   examining physicians and psychologists.   And, the ALJ failed to provide specific and

5   legitimate reasons for accepting this opinion over the opinions of physicians and

6   psychologists who had a more significant longitudinal perspective and who examined

7   plaintiff. *See Van Nguyen*, *supra*, 100 F.3d at 1466 (*citing Lester, supra*, 81 F.3d at 831)

8   ("In order to discount the opinion of an examining physician in favor of the opinion of a

9   nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that

10  are supported by substantial evidence in the record").

11

12          An examining physician's opinion is "entitled to greater weight than the opinion

13  of a nonexamining physician."  *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also*

14  20 C.F.R. § 404.1527(d).  A non-examining physician's or psychologist's opinion may

15  not constitute substantial evidence by itself sufficient to justify the rejection of an opinion

16  by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations

17  omitted). However, "it may constitute substantial evidence when it is consistent with

18  other independent evidence in the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing*

19  *Magallanes, supra*, 881 F.2d at 752).  Here, the ALJ failed to provide substantial and

20  independent evidence in the record to support his conclusion that the state consultant's

21  conclusions should be afforded more weight that plaintiff's treating and examining

22  physicians and psychologists.

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 17

### III.   Did the ALJ comply with SSR 96-8p when formulating plaintiff's RFC and are the ALJ's step 5 findings based on that RFC supported by law and fact?

A determination regarding RFC "'is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'" *Brown v. Astrue*, 405 Fed. Appx. 230, 233, 2010 U.S. App. LEXIS 26760 at **6 (9th Cir. 2010) (per curiam) (unpublished opinion) (*quoting* Social Security Ruling "SSR 96-8p, 1996 SSR LEXIS 5  at *5) (*citing* 20 C.F.R. § 416.945; *Reddick*, *supra*, 157 F.3d at 724). Residual functional capacity is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c).

In evaluating whether or not a claimant satisfies the disability criteria, the Commissioner evaluates the claimant's "ability to work on a sustained basis." *See* 20 C.F.R. § 404.1512(a).  The regulations further specify:  "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis."  20 C.F.R. § 404.1545(b); *see also* 20 C.F.R. §  404.1545(c) (mental abilities).

The determination regarding an RFC depends on a proper evaluation of the medical evidence.  Since the medical evidence was not evaluated properly, any RFC based on that evaluation must be re-done, as well. For the reasons stated and based on the

relevant record, the Court concludes that the identified errors were harmful and that this matter must be reversed and remanded.

<u>CONCLUSION</u>

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 28th day of January, 2013.

J. Richard Creatura
United States Magistrate Judge